USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/16/16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- X

**In re**

**MONEY CENTERS OF AMERICA,**
**INC. and CHECK HOLDINGS, LLC,**

**Debtors.**

--------------------------------------------------

**MICHAEL ST. PATRICK BAXTER,**
**solely in his capacity as Chapter 11**
**Trustee of MONEY CENTERS OF**
**AMERICA, INC.,**

**Plaintiff,**

**- against -**

**SHERB & CO., LLP and RBSM, LLP,**

**Defendants.**

-------------------------------------------------- X

**OPINION AND ORDER**

**Chapter 11 Case No. 14-10603**
**(U.S. Bankruptcy Court for the**
**District of Delaware)**

**Jointly Administered**

**A.P. No. 15-1006**
**(U.S. Bankruptcy Court for the**
**Southern District of New York)**

**15-cv-8757 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Defendant RBSM, LLP ("RBSM") moves to withdraw the reference

to the Bankruptcy Court of an adversary proceeding for breach of contract and

professional negligence brought by Michael St. Patrick Baxter ("plaintiff"), solely

in his capacity as Chapter 11 Trustee of Money Centers of America, Inc. ("MCA").

For the reasons set forth below, defendant's motion to withdraw the reference of

the above-captioned adversary proceeding pursuant to section 157(d) of Title 28 of

1

the United States Code is GRANTED.

## I.    BACKGROUND

In March 2014, MCA filed a chapter 11 petition in the United States

Bankruptcy Court for the District of Delaware.  Plaintiff was appointed as Chapter

11 Trustee a month after the filing.[1]  On January 16, 2015, plaintiff filed this

adversary proceeding in the Bankruptcy Court for the Southern District of New

York. As explained by plaintiff, "[t]he case was filed in New York because that is

where Defendants are based."[2]  The adversary proceeding was assigned to

Bankruptcy Judge Sean Lane.

The Complaint states that the adversary proceeding is non-core.  That

description is accurate and uncontested.  Plaintiff asserts claims for breach of

contract and professional negligence.[3]  Specifically, the Complaint alleges that

defendant accounting firm Sherb & Co., LLP ("Sherb") served as MCA's auditor

---

[1]      *See* Case No. 14-10603 [Docket No. 89].

[2]      Chapter 11 Trustee's Memorandum of Law in Opposition to Motion
to Withdraw the Reference of Defendant RBSM, LLP. ("Pl. Opp."), at 2.

[3]      *See generally* 1/16/15 Complaint for Breach of Contract and
Professional Negligence ("Complaint"), Exhibit A to Memorandum of Law in
Support of Motion of Defendant RBSM, LLP to Withdraw the Reference from the
Bankruptcy Court and Transfer This Adversary Proceeding to the District Court for
New York's Southern District ("Def. Mem.").

and breached its contractual duties to "obtain reasonable assurance about whether the financial statements are free of material misstatements, . . . [including those related to] misappropriation of assets" and to "inform [MCA] of any material errors or fraud" of which it became aware.[4]  According to the Complaint, RBSM is liable as Sherb's successor following a de facto merger with Sherb.[5]

RBSM filed an Answer in March 2015 and an Amended Answer in April 2015.[6]  Sherb has neither appeared in the proceeding nor filed an answer. Accordingly, in July 2015, the Clerk of the Bankruptcy Court entered a default against Sherb pursuant to Federal Rule of Civil Procedure 55(a), made applicable by Federal Rule of Bankruptcy Procedure 7055.[7]

Judge Lane entered an initial scheduling order on June 10, 2015, a protective order on September 2, 2015, and an amended scheduling order on November 10, 2015.  Under the amended scheduling order, fact discovery ends on March 31, 2016, and dispositive motions are due by July 28, 2016.[8]

---

[4]     *Id.* ¶¶ 19, 28.

[5]     *See id.* ¶¶ 4, 39, 45.

[6]     *See* 3/27/15 Answer by RBSM, Exhibit B to Def. Mem.; 4/15/15 Amended Answer by RBSM, Exhibit C to Def. Mem.

[7]     *See* A.P. No. 15-1006 [Docket No. 22].

[8]     *See id.* [Docket Nos. 19, 29, 33].

3

## II.   LEGAL STANDARD

District courts have original jurisdiction over bankruptcy cases and all proceedings that "arise under" Title 11 or "arise in" or are "related to" a bankruptcy case.[9]  District courts are authorized by statute to refer cases and proceedings within the court's bankruptcy jurisdiction to bankruptcy judges of the district.[10]  The Southern District of New York has a standing order that provides for automatic reference of such cases and proceedings.[11]

Under section 157(d) of Title 28 of the United States Code, "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  As a general rule, "courts should employ withdrawal judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court."[12]  The moving party bears the burden of establishing that permissive withdrawal is warranted.

---

[9]     28 U.S.C. § 1334.

[10]    *See id.* § 157(a).

[11]    *See* In re: Standing Order of Reference Re: Title 11, 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012).

[12]    *Schneider v. Riddick (In re Formica Corp.)*, 305 B.R. 147, 149-50 (S.D.N.Y. 2004) (quotation marks omitted).

4

In *In re Orion Pictures Corporation*, the Second Circuit explained that a showing of cause depends on a number of factors.[13] These include whether the proceeding is core or non-core and, if a jury demand has been made, whether the proceeding is legal or equitable, as well as considerations of judicial economy, uniformity of bankruptcy administration, reduction of forum shopping, economical use of debtors' and creditors' resources, and expediting the bankruptcy process.[14] The relevance of the core/non-core inquiry is that absent the consent of the parties, only Article III judges can enter final judgments in non-core proceedings.[15] When a matter is non-core, and absent the consent of the parties, a bankruptcy judge must issue proposed findings of fact and conclusions of law that are reviewed de novo by the district court.[16]

Thus, the determination that a matter is not core may support withdrawal of the reference if the district court "conclude[s] that . . . unnecessary

---

[13]    4 F.3d 1095, 1101 (2d Cir. 1993).

[14]    *See id. See also Kenai Corp. v. National Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y. 1992).

[15]    *See Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52, 87 (1982) (concluding that permitting Article I bankruptcy judges to enter final judgments on state-law claims violates Article III of the Constitution).

[16]    *See* 28 U.S.C. § 157(c).

5

costs could be avoided by a single proceeding in the district court."[17]  However,

"the core/non-core distinction" is often a "distinction without a difference" because

the other *Orion* factors may counsel in favor of allowing the proceeding to remain

in the bankruptcy court through the pretrial stages of the action even if it is not

core.[18]  Indeed, the bankruptcy court's issuance of proposed findings of fact and

conclusions of law may promote judicial economy and aid the district court,

particularly where the bankruptcy court is familiar with the underlying bankruptcy

case, the adversary proceeding, and/or the substantive bankruptcy law applicable to

the proceeding.[19]

---

[17]    *Orion*, 4 F.3d at 1101.

[18]    *Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg., Inc.*, No. 01 Civ. 7964, 2003 WL 68036, at *10 (S.D.N.Y. Jan. 8, 2003). *Accord Northeast Indus. Dev. Corp. v. ParkStone Capital Partners, LLC (In re Northeast Indus. Dev. Corp.)*, 511 B.R. 51, 53 (S.D.N.Y. 2014) ("While the core/non-core determination is an important factor, courts have repeatedly emphasized that this factor is not dispositive of a motion to withdraw a reference.") (collecting cases).

[19]    *See, e.g., In re Soundview Elite Ltd.*, No. 13 Civ. 13098, 2014 WL 2998529, at *4 (S.D.N.Y. July 3, 2014) (stating that "it will be more efficient, and provide a benefit to this Court on review, to have Judge Gerber determine the nature of plaintiff's claim in the first instance because he has greater familiarity and expertise in parsing the subtle distinction between true turnover proceedings and improperly labeled contract actions") (internal quotation marks omitted); *Lehman Bros. Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.)*, 18 F. Supp. 3d 553, 558 (S.D.N.Y. 2014) ("The Bankruptcy Court's resolution of any motion for summary judgment, or any decision by the Bankruptcy Court based on

6

## III.   DISCUSSION

RBSM has demonstrated cause to withdraw the reference. The reference should be withdrawn because "unnecessary costs could be avoided by a single proceeding in the district court."[20]   Judge Lane has no connection to the underlying bankruptcy case and the Complaint asserts non-core state law claims. Because the claims are non-core, and RBSM does not consent to the Bankruptcy Court entering a final judgment, the Bankruptcy Court is required to issue proposed findings of fact and conclusions of law on dispositive motions which are subject to de novo review by the district court. This extra layer of review can be avoided if the matter is withdrawn to the district court.

RBSM will be prejudiced by the cost and delay of having to multiply proceedings in this way. The sooner the action is transferred to the district court,

---

the documentary record, will be very useful to the District Court given the Bankruptcy Court's experience with the Lehman bankruptcies and related adversary proceedings involving swap agreements and derivative-based claims.); *Kirschner v. Agoglia*, 476 B.R. 75, 83 (S.D.N.Y. 2012) ("The Bankruptcy Court has already spent three years working on this adversary proceeding and is intimately familiar with its details. While it will now have to issue a report and recommendation, rather than a final judgment, and the district court will have to review the matter de novo, experience strongly suggests that having the benefit of the report and recommendation will save the district court and the parties an immense amount of time.").

[20]      *Orion*, 4 F.3d at 1101.

the sooner *that* court can familiarize itself with the case and shepherd it to a resolution. The parties do not obtain any benefit from the case being before the Bankruptcy Court. In fact, the only reason the case was filed in the Bankruptcy Court is because of the standing order of reference.

It is therefore somewhat surprising that plaintiff even objects to RSBM's motion. Yet plaintiff makes the knee-jerk argument that RBSM's motion is not ripe because the case may never reach trial,[21] and argues that the fact "[t]hat MCA's main bankruptcy case is pending in Delaware does not detract from the fact that the bankruptcy court . . . has become generally familiar with the case during the more than ten months it has been pending, and that keeping it there for pretrial purposes is thus most efficient."[22] While Judge Lane may have some general knowledge,[23] that does not mean that his continued stewardship of the case

---

[21]     *See* Pl. Opp. at 4-5 (citing *Walker, Truesdell, Roth & Assocs. v. The Blackstone Grp., L.P. (In re Extended Stay, Inc.)*, 466 B.R. 188, 197 (S.D.N.Y. 2012) (stating that "permissive withdrawal [of the reference] to take 'the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial ready.'").

[22]     *Id.* at 7.

[23]     The record reflects that Judge Lane's involvement in this case has been limited to the entry of two scheduling orders and a protective order and two telephonic conferences regarding scheduling. Plaintiff's suggestion that the entry of default against Sherb bolsters Judge Lane's knowledge of, or involvement in,

8

is prudent or likely to promote judicial economy or efficiency. MCA's bankruptcy

case is pending in the District of Delaware, there are no related adversary

proceedings pending before Judge Lane, and the adversary proceeding is based on

two state-law claims. By contrast, the cases plaintiff cites set forth clear

efficiencies in having the bankruptcy court continue to preside over the pretrial

stages of the proceeding. These efficiencies are based on factors such as the

bankruptcy court's familiarity with the underlying bankruptcy case, the existence

of both core and non-core claims, or the bankruptcy court having had extensive

pretrial involvement with the adversary proceeding.[24]

---

the case merits no response. *See id.* at 3 ("And [the Bankruptcy Court] has entered
the referenced default against Sherb."). Judge Lane did not enter the default — the
Clerk of the Court performed this ministerial function pursuant to Rule 55(a),
based on Sherb's failure to file an answer.

[24]      *See Extended Stay, Inc.*, 466 B.R. at 206 ("Here, the other *Orion*
considerations weigh against withdrawal. The bankruptcy court has been
administering the Extended Stay bankruptcy for over two years. Judicial economy
would be promoted by allowing the bankruptcy court, already familiar with the
extensive record in this case, to initially adjudicate these cases."); *In re Lehman
Bros. Holdings Inc.*, 480 B.R. 179, 195 (S.D.N.Y. 2012) ("The bankruptcy court
has been overseeing and administering the Lehman bankruptcy proceedings since
their inception three years ago and has been deeply involved in this adversary
proceeding, which has been pending since May 26, 2010. As such, the bankruptcy
court is already fully immersed in the issues central to this litigation, having
already ruled on JPMC's motion to dismiss as well as a motion to reconsider that
ruling."); *In re Lyondell Chem. Co.*, 467 B.R. 712, 723 (S.D.N.Y. 2012)
(explaining extensive work already performed by the bankruptcy court); *In re
Formica Corp.*, 305 B.R. 147, 150-51 (S.D.N.Y. 2004) (same); *Adelphia*

9

Judge Lane's limited involvement in the adversary proceeding does not suggest any such efficiencies.  There is no sense in which a district court could benefit from any specialized knowledge of the Bankruptcy Court by virtue of its knowledge of the underlying bankruptcy case, the Bankruptcy Code, or as a result of the minimal activity in the adversary proceeding itself.[25]  At the same time, it is a waste of judicial resources for a court of specialized bankruptcy knowledge to

_Commc'ns Corp. v. Rigas_, No. 02 Civ. 8495, 2003 WL 21297258, at *2 (S.D.N.Y. June 4, 2003) (finding in case involving both core and non-core claims that "[t]he non-core and core claims are interrelated, such that dividing these claims between two different forums would not promote judicial economy, and would only lead to increased delay and costs to the parties. Further, the bankruptcy court's familiarity with this matter puts it in the best position to oversee this litigation."); _Enron Power Mktg., Inc.,_ 2003 WL 68036, at *10 (finding that it was more efficient to have the bankruptcy court administer the case because there were twelve other adversary proceedings before the same judge each dealing with the interpretation of a similar agreement); _In re Times Circle E., Inc._, No. 94 Civ. 455593, 1995 WL 489551, at *3 (S.D.N.Y. Aug. 15, 1995) (explaining that "the bankruptcy court is familiar with the issues facing Times Circle's estate as a result of overseeing its administration, including having conducted an evidentiary hearing"); _Kenai Corp._, 136 B.R. at 61 ("Given Judge Brozman's familiarity with the bankruptcy case involving Kenai, she is in the best position to monitor all the proceedings related to that bankruptcy, including this adversary proceeding.").

[25]     _See Soundview Elite Ltd._, 2014 WL 2998529, at *4 (explaining that the District Court would "benefit from Judge Gerber's prior consideration of the parties' estoppel dispute, because that dispute hinges on proceeding held before him"); _Lehman Bros. Holdings Inc._, 18 F. Supp. 3d at 558 (citing the bankruptcy court' experience with the underlying bankruptcy and related adversary proceedings); _Kirschner_, 476 B.R. at 83 (explaining that the bankruptcy court had "already spent three years working on this adversary proceeding and is intimately familiar with its details").

10

administer a case that does not require application of that knowledge.[26]

   Finally, plaintiff admits that several *Orion* factors — uniformity of bankruptcy administration, reduction of forum shopping, economical use of debtors' and creditors' resources, and expediting the bankruptcy process — are not relevant here, and that defendant's request for a jury trial will be relevant at the trial stage.[27]  Accordingly, the balance of the *Orion* factors weigh in favor of granting RBSM's motion to withdraw the reference pursuant to section 157(d).[28]

## IV. CONCLUSION

   For the foregoing reasons, RBSM's motion is GRANTED.  The Clerk of the Court is directed to close this motion [Docket # 1].  The amended scheduling order entered in the Bankruptcy Court on November 10, 2015 remains in effect,

---

[26] *See New York Skyline, Inc. v. Empire State Bldg. Co. L.L.C.*, 542 B.R. 321, 324 (S.D.N.Y. 2015) (stating that "it is hard to imagine how judicial economy is served by a specialized Article I court performing a function . . . at the [ ] margin of its powers").

[27] *See* Pl. Opp. at 7, n.1.

[28] RBSM filed its motion to withdraw some nine months after the adversary proceeding was initiated.  While RBSM does not provide a particularly convincing explanation for why it waited so long, plaintiff does not challenge the motion on grounds of untimeliness, and given the lack of activity in the Bankruptcy Court, I find no prejudice based on the timing of the motion.

except that the April 12, 2016 status conference will be held before this Court at

4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 16, 2016

12

## - Appearances -

**For Plaintiff:**

Dianne Frances Coffino, Esq.
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
(212) 841-1043

Benjamin J. Razi, Esq.
Dennis B. Auerbach, Esq.
Covington & Burling LLP
One CityCenter
850 10th Street NW
Washington, DC 20001
(212) 662-6000

**For Defendant RBSM, LLP:**

Eric S. Cohen, Esq.
Jonathan S. Ziss, Esq.
Goldberg Segalla, LLP
600 Lexington Avenue, Suite 900
New York, NY 10022
(646) 292-8700

13